**Clarence J. DICKENS, Jr., Appellant,**

v.

**Brandi BARNHART, Appellee.**

Superior Court of Pennsylvania.

Argued March 4, 1998.

Filed April 28, 1998.

John W. Pollins, III, Greensburg, for appellant.

Ernest P. Dehaas, III, Uniontown, for appellee.

Before JOHNSON and HUDOCK, JJ., and CERCONE, President Judge Emeritus.

HUDOCK, Judge:

This is an appeal following a jury verdict by which Appellee was absolved of negligence in causing Appellant's injuries. In this appeal, Appellant asserts that the trial judge erred in charging the jury on the sudden emergency doctrine. He also argues that the conduct of the trial judge during the trial prejudiced him. Since we find no merit to these arguments, we affirm.

The facts and procedural history may be summarized as follows: In the early morning of June 27, 1992, Appellant was one of three passengers in a car driven by Appellee along a rural road when, suddenly, a dense fog bank was encountered. Appellee testified that visibility dropped to practically zero and that she could not see the painted lines on the road after she had entered the fog. Moreover, she estimated that she had been travelling at roughly forty miles per hour before the fog. Immediately upon entering the fog, she stated that she "took [her] foot off of the gas and just kept [her] wheel straight." N.T., 2/19/96, at 291. She also turned down the volume of the radio, stopped

talking, and dimmed her high-beam headlights.

Unbeknownst to Appellee, the road at that point curves to the left. Thus, when she continued to steer straight ahead, the car traveled off the road surface, hit a "bump", and ultimately collided with a tree.[1] *Id.* at 292. Appellee contended that she had applied the brakes after hitting the "bump," but the evidence and testimony were inconclusive regarding this point.

Appellant, who had been sitting in the rear seat, testified that he saw the top of the tree with which Appellee collided. He estimated the distance between the gas meter and the tree at approximately seventy-five feet.[2] Because he believed that he could steer the car away from the tree, Appellant reached between the front bucket seats. Before he was able to steer, however, the car collided with the tree. *Id.* at 52–3. As a result of the accident Appellant suffered injuries including, *inter alia,* severe fractures in his left hand.

Appellant brought suit in the Court of Common Pleas of Greene County, alleging negligence on the part of Appellee. Appellant sought to admit evidence that Appellee had pled guilty[3] to a violation of Section 3361 of the Motor Vehicle Code, the statutory codification of the common law assured clear distance rule (section 3361).[4] This request was denied. At the end of testimony, the court charged the jury on both the assured clear distance statute and the sudden emergency doctrine. It returned a verdict in favor of the Appellee. Timely post-trial motions were denied.

After trial, a local newspaper published a story wherein an anonymous juror stated that the trial judge had upset the jurors with his habit of chewing tobacco and spitting into a cup during an unidentified trial. Appellant, believing this to be his trial, argued in a supplemental post-trial motion that this judicial conduct prejudiced him. Consequently, he requested a new trial. This motion was denied as well. This appeal followed.

Appellant first asserts that the jury was improperly charged on the sudden emergency doctrine.[5]

> When reviewing a claim that the trial court erred in instructing the jury, the scope of appellate review is whether the court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. This [C]ourt will look at the charge in its entirety against the background of evidence in the case to determine whether error was made and whether it was prejudicial. The court will not consider only portions taken out of context, nor will it reverse for isolated inaccuracies.

*Wagner v. Anzon, Inc.,* 453 Pa.Super. 619, 632, 684 A.2d 570, 576–77 (1996).

Appellant advances three different arguments why the sudden emergency charge was improper. First, since Appellee was cited for a summary violation of section 3361, Appellant asserts that she was ineligible as a

---

1. The bump was a natural gas meter that Appellee had not seen.

2. The report of the state police trooper who investigated the accident set the distance at approximately fifty feet. *See* N.T., 2/19/96, at 164. There is no evidence that anyone accurately measured the actual distance.

3. We note that the official record before us does not include a copy of this citation. However, the copy in the reproduced record indicates not that Appellee pled guilty to this summary offense, but that she failed to appear and was thus ordered to pay the fine and costs.

4. The parties dispute whether Appellant made a proper offer of proof regarding this citation and, thus, whether he has preserved it for our review. He alleges that a formal offer was made during an unreported pre-trial hearing and that it was attached to the police report as trial exhibit seven. Appellant's Brief at 5. However, assuming arguendo that the issue is properly preserved, it has no merit. *See infra* pages 4–6.

5. Appellant's "Statement of the Questions Involved" alleges that the unavoidable accident charge was improper as well. However, he utterly fails to develop this issue in his argument. The case law of this Commonwealth firmly establishes that issues presented in the statement of questions involved but not developed in the argument are deemed to be waived. Thus, we will not discuss whether the unavoidable accident charge was proper. *See Harvilla v. Delcamp,* 521 Pa. 21, 24, 555 A.2d 763, 765 n. 1 (1989); *Harkins v. Calumet Realty Co.,* 418 Pa.Super. 405, 412–14, 614 A.2d 699, 703 (1992).

matter of law for the sudden emergency charge. Appellant contends that any other conclusion permits negligent drivers to hide behind the rule that summary criminal convictions are not admissible in civil lawsuits. *See, e.g., Folino v. Young,* 523 Pa. 532, 535–39 568 A.2d 171, 173–74 (1990) (while our Supreme Court held that a summary conviction that is "a necessary operative fact" of a non-summary criminal conviction can be admitted as a conclusive fact in a civil suit arising from the same event, it reiterated its "strong sentiment" that convictions for summary offenses, by themselves, are inadmissible).

Appellant acknowledges that a conviction under section 3361, standing alone, cannot be admitted before civil juries under our case law. Instead, he argues that a trial judge should use such inadmissible evidence when making decisions of law regarding how he should charge the jury.[6] *See* Appellant's Brief at 12. We disagree. Preliminarily, Appellant presents absolutely no authority supporting his argument. Moreover, the policy reasons supporting the exclusion of such evidence are sound. As our Supreme Court has noted, issues like expediency and convenience, rather than guilt, often control trial technique in cases involving a summary traffic violation.

> "In such cases, it is not obvious that the defendant has taken advantage of his day in court, and it would be unreasonable and unrealistic to say he waived that right as to a matter (civil liability), which was probably not within contemplation at the time of the conviction."

*Folino,* 523 Pa. at 536, 568 A.2d at 173 (*quoting Hurtt v. Stirone,* 416 Pa. 493, 498–99, 206 A.2d 624, 626–27 (1965)).

▮ Our Supreme Court's concern is particularly true with respect to the facts of the instant case. Appellee was not found guilty of a violation of section 3361 by the court nor did she plead guilty. Instead, she failed to appear for a hearing and, consequently, was

assessed fines and costs. Given that Appellee neglected to take advantage of her day in court, it would be unreasonable for us to now hold, as the Appellant urges, that her decision not to defend the summary offense should have been considered by the trial court when it formulated the jury charge.

Moreover, our conclusion is buttressed by a careful reading of the first sentence of section 3361:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the *actual and potential hazards then exist-ing,* nor a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead.

75 Pa.C.S.A. § 3361. This sentence clearly demonstrates that two discrete events, either driving at a speed which is unreasonable or imprudent or driving at a speed which prevents an individual from stopping her vehicle within the assured clear distance ahead, could give rise to a violation of section 3361. Since Appellee's citation is vague as to which event gave rise to her violation, it would be unreasonable for us to conclude that it was the assured clear distance ahead rule.

Importantly, contrary to Appellant's allegations, our holding does not allow civil defendants to hide behind summary criminal convictions. To the contrary, it simply requires plaintiffs to prove their cases with a preponderance of the evidence. Moreover, as the special verdict form in the instant case demonstrates, the jury rejected Appellant's argument that Appellee had been operating her vehicle in violation of the assured clear distance statute.[7] Thus, the jury never even reached the issue of sudden emergency.

Next, Appellant argues that the sudden emergency charge was improper because the doctrine "applies only to moving intrusions unexpectedly thrust into the driver's path, not to static objects." Appellant's Brief at 13. Appellant asserts that it is patently obvi-

---

6. Curiously, however, Appellant argues that such a conviction would also provide enough evidence for a trial judge to conclude that a civil defendant was negligent as a matter of law. *See* Appellant's Brief at 13.

7. We note, additionally, that Appellant does not allege that the jury's conclusion in this regard was contrary to the weight of the evidence.

ous that the tree with which Appellee collided was not moving.

While Appellant is correct in stating that this Court has traditionally adhered to a distinction between static and moving objects, our Supreme Court has indicated that it does not "believe it to be as inflexible a rule as that ascribed to it by the lower courts...." *Lockhart v. List,* 542 Pa. 141, 154, 665 A.2d 1176, 1182 (1995). Moreover, the sudden emergency that Appellee encountered was not the tree, but the dense patch of fog on the road. As this Court has stated:

> A sudden and clear emergency may be a dust cloud, a moving object, a sudden blocking of the road, the sudden swerving of other vehicles or ... blinding lights.

*Unangst v. Whitehouse,* 235 Pa.Super. 458, 465, 344 A.2d 695, 699 (1975).

■ Testimony from three witnesses, the Appellee and two of her passengers, indicated that the dense fog on the roadway was an isolated patch. *See* N.T., 2/19/96, at 180, 185 & 290. One passenger in particular noted that they had not encountered any fog on the road prior to the fog bank where the accident occurred. *Id.* at 180. This fog bank was so dense that Appellee could not see the lines of the road in front of her. *Id.* at 290–91. This testimony demonstrates that the fog bank which Appellee encountered was analogous to a sudden blocking of the road by unexpected blinding light or dust clouds in the roadway. We hold that the sudden fog qualifies as a sudden emergency, and the court's charge was, therefore, proper.

■ Third, Appellant contends that the amount of time it took Appellee to react to the fog conclusively establishes that she is not entitled to a charge on the sudden emergency doctrine. As our case law states, "[I]f the actor has time to avoid the ultimate mishap and fails to act accordingly, the emergency ceases to be." *McKee v. Evans,* 380 Pa.Super. 120, 148, 551 A.2d 260, 274 (1988) (en banc).

Appellant's argument on this point is thin. He cites no case law besides *McKee* and fails to even analogize to that case. Moreover,

Appellant places great weight upon the fact that Appellee never braked before her car struck the tree. However, the evidence supporting this assertion is equivocal. Appellee herself claimed that she did apply the brakes, and the trooper who investigated the accident simply stated that there was "no evidence" of braking. *See* N.T., 2/19/96, at 293 & 161. In fact, several of the actions of Appellee cited by Appellant in support of this point, including, *inter alia,* turning down the volume of the radio, dimming the high beams of the headlights, and letting up on the gas pedal, support an inference that she reacted upon encountering dense fog, and we cannot say as a matter of law that she was negligent in this sudden emergency situation.

■ Appellant's second argument is one that this Court does not often encounter. Citing to a newspaper article appended to his supplemental motion for post trial relief,[8] Appellant asserts that he was prejudiced by the fact that the jury was distracted and disgusted by the trial judge's habit of chewing tobacco and spitting the juice into a Styrofoam cup. He argues that this judicial conduct warrants a new trial or, at the least, a remand for polling of the jury.

Appellant is making serious charges against the trial judge in the instant case. As he candidly admits, it is extremely rare for judicial misconduct to be sufficiently prejudicial to justify a new trial. In fact, this Court has stated that " 'the record must clearly show prejudice' ... before reversal is warranted." *Kenworthy v. Burghart,* 241 Pa.Super. 267, 272, 361 A.2d 335, 338 (1976) (*citing Pusey's Estate,* 321 Pa. 248, 262, 184 A. 844, 850 (1936)). Appellant does not explain, nor will we speculate, how the alleged conduct of the trial judge in the instant matter prejudiced him. Moreover, he does not explain how a remand for the purpose of polling the jury would assist him in discovering such prejudice. Assuming arguendo, however, that the jury in Appellant's case was disgusted by the trial judge's chewing tobacco habit, he presents no evidence that the jury transferred that disgust to Appel-

---

8. The newspaper article relates the anonymous statements of one individual juror. *See Sittin',*

*Spittin' Judge Grosses Out Local Women Jurors,* GREENE COUNTY MESSENGER, March 1, 1996, at 1.

lant. Furthermore, we are at a loss to understand how a juror's dislike for the trial judge could be transferred to a litigant.

For the foregoing reasons, Appellant's arguments do not provide relief.

Judgment affirmed.